DECISION
{¶ 1} Relator, James E. Rush, Jr., has filed this original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's request for an extension of vocational rehabilitation and living maintenance benefits and ordering the commission to find that he is entitled to those benefits. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny the requested writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator filed an objection to the decision of the magistrate objecting to the magistrate's interpretation of the evidence and the application of the relevant Ohio Administrative Code sections. Relator's main objection to the magistrate's decision is that the magistrate states there is no evidence in the record that the Ohio Bureau of Workers' Compensation ("BWC") and the commission arbitrarily applied a two-year limitation to terminate his living maintenance benefits. Relator argues that an internal guideline limited payment of living maintenance benefits to a two-year period. He argues an inconsistency exists in setting a goal of obtaining a four-year degree but terminating his benefits in two years.
 {¶ 4} The magistrate addressed this argument directly, finding that although the record contains several references to internal guidelines limiting the payment of living maintenance benefits to a two-year period, the magistrate found there is no evidence that the BWC and the commission arbitrarily applied the two-year period to terminate relator's living maintenance benefits. Relator actually received living maintenance benefits for longer than two years, so the argument that an arbitrary two-year period was applied does not have much merit. The magistrate found that the goals of vocational rehabilitation to return relator to work, not to a specific job, were met, that relator agreed and acknowledged that living maintenance benefits would be paid to him for two years, that relator could not demonstrate that it was an abuse of discretion to *Page 3 
find that the goals of his vocational rehabilitation plan had been met and that relator cannot show a clear legal right to the continuation of living maintenance benefits for any period of time since extensions of payment are discretionary, not mandatory. Thus, the magistrate found that relator could not demonstrate a clear legal right to a writ of mandamus.
 {¶ 5} The vocational rehabilitation plans and the amended vocational plans indicate that the BWC guidelines allow only a two-year training period, which was discussed with relator. The plans provide that relator received living maintenance for a two-year period pursuant to BWC guidelines. Relator agreed to each plan amendment which provided that the living maintenance benefits would continue for two years or until July 2007. By July 2007, relator had completed three of the four years (six semesters) of his educational degree and had certainly received the skills necessary to secure employment.
 {¶ 6} Relator also argues that he never received an evaluation performed by the BWC pursuant to Ohio Adm. Code 4123-18-04(E) to determine if a continuation of the vocational rehabilitation plan would further aid him in obtaining the goal set forth to obtain a four-year degree. Ohio Adm. Code 4123-18-04(E) provides: "Living maintenance payments shall not be ordered by the bureau for a period or periods exceeding six months in the aggregate, unless review by the bureau reveals that the injured worker will be benefited by an extension of vocational rehabilitation services." The magistrate also addressed this argument, finding that all claimants would benefit from the payment of living maintenance benefits while they pursued an education to be able to attend classes full-time without having to secure either part-time or full-time employment. *Page 4 
However, the living maintenance benefits were paid for over two years and, having found that the goals of the vocational rehabilitation plan were met, the benefits were terminated. As the magistrate found, relator cannot demonstrate a clear legal right to a writ of mandamus. Therefore, relator's objection to the magistrate's decision is overruled.
 {¶ 7} Following an independent review, pursuant to Civ. R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objection overruled; writ of mandamus denied.
McGRATH, P.J., and SADLER, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION {¶ 8} Relator, James E. Rush, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for an extension of vocational rehabilitation and living maintenance benefits and ordering the commission to find that he is entitled to those benefits. *Page 6 
Findings of Fact: {¶ 9} 1. Relator sustained a work-related injury on January 25, 2004, and his claim has been allowed for "lumbar strain; herniated discs at L3-4 and L4-5."
 {¶ 10} 2. Relator has permanent job restrictions which prevent him from returning to his previous employment.
 {¶ 11} 3. On March 21, 2005, relator sought vocational rehabilitation. Originally, relator received physical conditioning therapy to stabilize his low back, and job placement/career counseling to assist him in securing a new position in the same or similar industry within his restrictions. Living maintenance payments were approved for 11 weeks.
 {¶ 12} 4. A functional capacity evaluation was performed and it was determined that relator was capable of medium range work.
 {¶ 13} 5. The Ohio Bureau of Workers' Compensation ("BWC") agreed to extend relator's vocational rehabilitation program for five weeks of additional job placement services and paid living maintenance benefits during that time. Thereafter, it was determined that relator needed college level training in order to secure a comparably paying job within his physical restrictions.
 {¶ 14} 6. Relator applied for education assistance through the Bureau of Vocational Rehabilitation ("BVR"). At the time, it was noted that relator had been searching for a job for approximately five weeks and, although he had applied for several entry-level office positions, he was repeatedly informed that only persons with college level training would be considered. Further, relator had obtained a letter of intent from Thomas Martin, a patent attorney, who agreed to hire relator as a patent agent after he *Page 7 
received an undergraduate degree in a field such as engineering and passed a certification examination. Martin also indicated that relator might be able to pursue an internship at the end of the two-year period while he completes his course work.
 {¶ 15} 7. It was determined that relator would apply for admission to Akron University and pursue a four-year degree which would be paid for (tuition and books) through the BVR. It was contemplated that relator would begin college in July 2005 and complete the necessary course work in December 2009. Both the BWC and BVR required relator to maintain at least a 2.0 grade point average and a full-time case load in order to continue qualifying for benefits. Further, the BWC provided that relator would receive living maintenance benefits for the first two years of this long term training. By pursuing his education year-round, it was contemplated that relator could complete his degree in three to three and one-half years.
 {¶ 16} 8. In summary, relator's vocational rehabilitation plan provided:
 On 7/25/05, Mr. Rush will begin classes at the University of Akron. BVR will pay for tuition and books. The client will continue to receive Living Maintenance for a 2-year period as per BWC guidelines. Mr. Rush will be providing the necessary monthly reports and his grades. The MCO has requested that this Vocational plan be written in 6-month segments to ensure that the client's participation and grades are provided and meet guidelines. The client's monthly reports and grades will be submitted with my monthly reports. The plan will be amended every 6 months for 2 years (7/31/2007). At that time[,] the client has advised will pursue at least part-time employment while he completes coursework necessary for his degree (internship is possible with the intended employer).
 Relator agreed to the terms of the plan.
 {¶ 17} 9. Relator began college in July 2005. Relator met the academic requirements and his vocational rehabilitation plan was subsequently amended three *Page 8 
times. Each amendment authorized the payment of an additional six months of living maintenance benefits and relator signed documents indicating that he was aware that he would continue to receive living maintenance payments for two years and that "[w]hen this 2-year training plan ends on 7/31/2007, the client will pursue at least part-time employment while he completes coursework necessary for his goal degree and internship is possible with the intended employer."
 {¶ 18} 10. At the end of two years, the BWC terminated relator's vocational rehabilitation plan and living maintenance benefits as of July 30, 2007. Relator was sent a letter informing him as follows:
 This is to inform you that your rehabilitation file will be closed effective July 30, 2007 as you have completed the 2 years of college training initially agreed upon.
 If you wish re-consideration, please submit in writing your request for further review. This letter must be submitted to GATES MCDONALD within 14 days of receipt of this letter. Please send the request with an explanation of why you disagree with the closure of vocational rehabilitation services and any additional medical/vocational documentation[.] * * *
(Emphasis sic.)
 {¶ 19} 11. Relator requested reconsideration of the decision to close his rehabilitation file and requested a continuation of the vocational rehabilitation plan and living maintenance benefits.
 {¶ 20} 12. A vocational rehabilitation review was completed by Rose-Marie Drake, MA, CRC, on October 2, 2007. Ms. Drake recommended the following:
 * * * It is recommended that Mr. Rush's vocational rehabilitation plan remain closed. Mr. Rush has received training for a sufficient time period to allow him to gain skills to re-enter the work force in a reasonably appropriate job in terms of wages, occupational interests and physical *Page 9 
capabilities. Any interest in continuing his education appears, at this stage, to be based on his long-term personal goals and not based on the job loss resulting from the allowed conditions of the claim.
 {¶ 21} 13. By BWC order mailed October 3, 2007, the administrator denied relator's request for reconsideration.
 {¶ 22} 14. Relator appealed and the matter was heard before a district hearing officer ("DHO") on November 1, 2007 and resulted in an order affirming the decision of the administrator. The DHO explained:
 The District Hearing Officer finds that the Injured Worker has not met his burden in showing his entitlement to living maintenance benefits for an additional period of two years, and therefore affirms the Bureau of Workers' Compensation order dated 10/03/2007 and the closure of the vocational rehabilitation file effective 07/30/2007.
 The District Hearing Officer finds that the Injured Worker voluntarily entered into an agreement for vocational rehabilitation and living maintenance benefits for a two year period commencing in July, 2005. The Injured Worker signed the individualized vocational rehabilitation plan on 07/14/2005, acknowledging that he received a copy of the rehabilitation agreement and understands and accepts its conditions. That plan, which was the second plan and is identified as "Plan 2" in the file, specifically sets forth that the Injured Worker would receive living maintenance for a two year period, and that the plan would be amended every six months for two years, or until 07/31/2007. At that time, the client indicated that he would pursue at least part time employment while he completes course work necessary for a bachelors degree, and that internship is possible with the intended employer.
 The District Hearing Officer finds that the Injured Worker specifically agreed and accepted the plan with a limit of two years of living maintenance benefits, to be set forth in six month increments over the two years. The District Hearing Officer finds that the Injured Worker acknowledged the two year duration of the living maintenance benefits not only in the individualized vocational rehabilitation plan signed by the *Page 10 
Injured Worker, but throughout the progress and duration of the two year plan. The case worker reports and correspondence, including e-mail correspondence, conclusively establish that the Injured Worker was told from the start of the plan and consistently throughout the plan that the plan would be terminated as of 07/31/2007, and indicated his agreement and acceptance of those terms.
 The Injured Worker testified at the hearing that Ms. England, one of his case mangers, led him to believe that the plan might be extended beyond its termination date. However, the District Hearing Officer finds that the Injured Worker's testimony is refuted by his numerous acknowledgements, both at the start of the plan and throughout the plan, that he would be terminated from the living maintenance benefits as of 07/31/2007, and would seek part time or full time employment at that time. The District Hearing Officer finds no evidence that the Injured Worker was ever informed, or misled to believe, that the living maintenance benefits would be extended for the full four years of an undergraduate degree curriculum, nor has the District Hearing Officer found any evidence that the Bureau of Workers' Compensation or any of its employees agreed to a four year plan.
 The District Hearing Officer notes that the Injured Worker has had three six month extensions beyond the six months of living maintenance benefits permitted by the Ohio Administrative Code in his situation. The District Hearing Officer finds that these extensions were granted to fulfill the requirements of the agreed upon two year plan for vocational rehabilitation training. The District Hearing Officer finds no basis for the Injured Worker to reasonably argue that he is entitled to any further extensions, and especially that he is entitled to a four year period of time to obtain his undergraduate degree while receiving living maintenance benefits.
 {¶ 23} 15. The DHO relied upon the specific terms of the vocational rehabilitation plan which relator signed on July 14, 2005, the multiple references to the two-year limitation on the payment of living maintenance benefits in the case manger reports prepared during that two-year period, the multiple references to the two-year period in correspondence between relator and other parties, the consistent long-term goal and *Page 11 
timeframes set out in the managed care organization progress reports, the vocational rehabilitation closure report dated July 30, 2007, the vocational rehabilitation review report prepared by Ms. Drake dated October 2, 2007, and the August 18, 2007 report of Roxanne Benoit.
 {¶ 24} 16. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on December 12, 2007. The SHO vacated the DHO's order, yet still denied relator's request as follows:
 The claimant has challenged the closure of his vocational rehabilitation file by the Administrator on 07/30/2007. The claimant and the Administrator agreed to a series of rehabilitation plans and amended rehabilitation plans between 03/21/2005 and 01/25/2007. Each of these documents, signed by the claimant, clearly describe the expectations of the claimant and the limits and the limits of the plan, including explicit statements in each plan that the duration of services offered would not exceed two years. The 07/30/2007 vocational rehabilitation closure report prepared by the Administrator indicates that the claimant had successfully completed the vocational rehabilitation plans and the two year period of services specified in the plans had been completed.
 Although the claimant wishes to proceed with further vocational rehabilitation in the form of additional education, the Hearing Officer finds that such additional services are beyond the scope of the rehabilitation plans agreed to by the Administrator and claimant. Therefore, it is the finding of the Staff Hearing Officer that the Administrator properly closed the claimant's vocational rehabilitation file on 07/30/2007.
 This order is based on the 08/18/2007 report of R. Benoit and the 10/02/2007 report of R. Drake, vocational rehabilitation specialists who indicate that the Administrator's closure of the claimant's vocational rehabilitation plan was appropriate.
 {¶ 25} 17. Relator's further appeal was refused by order of the commission mailed January 16, 2008. *Page 12 
 {¶ 26} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 27} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 28} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 29} In his brief, relator sets out his issue as follows: "Is an individual entitled to living maintenance benefits to extend beyond a period of two years?" (Relator's brief, at 6.) *Page 13 
 {¶ 30} R.C. 4121.61 provides, in pertinent part:
 The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules, take measures, and make expenditures as it deems necessary to aid claimants who have sustained compensable injuries * * * to return to work[.] * * *
 {¶ 31} R.C. 4121.63 provides for the payment of living maintenance benefits. R.C. 4121.63 provides, in pertinent part:
 Claimants who the administrator of workers' compensation determines could probably be rehabilitated to achieve the goals established by section 4121.61 of the Revised Code and who agree to undergo rehabilitation shall be paid living maintenance payments for a period or periods which do not exceed six months in the aggregate, unless review by the administrator or the administrator's designee reveals that the claimant will be benefited by an extension of such payments.
 {¶ 32} Ohio Adm. Code Chapter 4123-18 supplements the Ohio Revised Code. Ohio Adm. Code 4123-18-02 pertains to the goals of vocational rehabilitation and provides, in pertinent part:
 (B) The objectives of the surplus-funded vocational rehabilitation program are to be addressed and considered in the following order:
 To return the injured worker to the former employer in the original job, or, if this is not possible;
 To encourage the employer to modify the original job or to provide employment in a different job, or, if this is not possible;
 To assist the injured worker in finding employment in a related industry, and if not possible then in any industry.
 The hierarchy of return to work objectives, as outlined above may require appropriate skill enhancement, remedial or short term training to aid injured workers in successfully returning to work at any of the steps. *Page 14 
 {¶ 33} Ohio Adm. Code 4123-18-05 provides for individualized written vocational rehabilitation plans. Each vocational rehabilitation plan must include the following information:
 [B](1) Identification of the injured worker's return to work goals and barriers to employment;
 (2) The types of services required;
 (3) The estimated costs;
 (4) The estimated length of time required to attain the goals of the plan;
 (5) An explanation of the specific strategies that will be employed to assist the injured worker in returning to work.
 {¶ 34} R.C. 4121.61 provides that the goal of rehabilitation services is to return the claimant to work. R.C. 4121.63 provides that living maintenance benefits are paid where it is determined that the claimant could probably be rehabilitated to establish the goals set out in R.C. 4121.61 and who agree to participate in rehabilitation. Living maintenance payments are to be made for a period or periods which do not exceed six months in the aggregate unless it is determined that the claimant will be benefited by the extension of such payments.
 {¶ 35} Relator argues that he has demonstrated that he would benefit from the extension of his living maintenance payments and that, pursuant to R.C. 4121.63, his benefits should be extended. Relator further points out that the vocational rehabilitation plan contemplated four years of college and, while the plan indicated that he would seek part-time work at the expiration of two years, that he could not support himself and his family while going to school full time and working on a part-time basis. *Page 15 
 {¶ 36} The commission counters by asserting that the scope of any vocational rehabilitation plan and the payment of living maintenance benefits is limited to the time necessary to reach the statutory goal of returning the injured worker to the workforce. The commission maintains that the record contains sufficient evidence supporting its decision that continued rehabilitation services for relator were outside the scope of the statutory goal. Further, the commission argues that relator was aware and agreed to the limitation of living maintenance payments to a two-year period. As such, the commission asserts that it did not abuse its discretion in denying relator's request for the continuation of living maintenance benefits.
 {¶ 37} For the following reasons, the magistrate agrees.
 {¶ 38} The goals of vocational rehabilitation are to return the injured worker to work. As such, the goals are to physically prepare and equip the injured worker with skills necessary in order to secure employment.
 {¶ 39} In the present case, the BWC determined that two years of college education was sufficient in order to enable relator to return to work. Further, by attending classes year-round, relator has actually completed six semesters (3 years) of college education. Relator does not contend that he could not secure employment at this time. Instead, relator argues that it would be difficult for him to work part-time to support himself and his family while continuing to pursue his education. Further, relator points out that it was clear that he had a specific job in mind when the plan was initiated. Relator does not have a degree yet and cannot perform that job. As such, relator contends that he would clearly benefit from the continuation of living maintenance benefits and that the BWC should have paid them to him. *Page 16 
 {¶ 40} The record reveals that relator's personal goals, at this time, are to complete his four-year degree at Akron University and then pursue a law degree. As such, relator is contemplating continuing his education well beyond two years. Certainly, the continuation of living maintenance benefits for two more years or beyond would clearly benefit relator. However, the goals of the rehabilitation program were to return relator to work and not to some higher paying job or any specific occupation. Clearly, all claimants would benefit from the payment of living maintenance benefits while they pursued an education. Further, all claimants would benefit from being able to attend classes full time without having to secure either part-time or full-time employment. However, under relator's argument, the administrator of the BWC has no discretion and is required to pay him living maintenance benefits while he completes his undergraduate degree at Akron University. That is not what is required.
 {¶ 41} Part of relator's argument focuses on evidence that there are internal guidelines limiting the payment of living maintenance benefits to a two-year period. Relator contends that it was these guidelines which were actually applied. As such, relator argues that the decision was not based on a determination that he had either agreed to the payment of living maintenance benefits solely for a two-year period of time or that the payment of living maintenance benefits for a period of two years was sufficient to return him to work.
 {¶ 42} Upon review of the stipulated evidence, the magistrate notes that there are several references to internal guidelines limiting the payment of living maintenance benefits to a two-year period. However, there is no evidence in the present case that the BWC and the commission arbitrarily applied this two-year period to terminate relator's *Page 17 
living maintenance benefits. Instead, relator actually received 16 additional weeks of living maintenance payments at the beginning of his rehabilitation before the plan for two years of payments was signed. First, it must be remembered that the goals of vocational rehabilitation are to return relator to work and not to any specific job. Second, on numerous occasions, relator agreed and acknowledged that living maintenance benefits would be paid to him for a period of two years. Third, relator cannot demonstrate that it was an abuse of discretion to find that the goals of his vocational rehabilitation plan had been met. Fourth, relator cannot show a clear legal right to the continuation of living maintenance benefits for any period of time. While R.C. 4121.63
clearly contemplates the discretionary extension of such payments, such extensions are not mandatory. As such, relator cannot demonstrate a clear legal right to a writ of mandamus.
 {¶ 43} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in approving the BWC's order terminating his living maintenance benefits and this court should deny relator's request for a writ of mandamus.
 *Page 1